ORAL ARGUMENT HELD: APRIL 8, 2013
DECIDED: JULY 12, 2013

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Nos. 11-1101, 11-1285, 11-1328, 11-1336 (Consolidated)

---

CENTER FOR BIOLOGICAL DIVERSITY, et al.

Petitioners,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,

Respondents.

---

Petitions for Review of Administrative Action
of The United States Environmental Protection Agency

---

**EPA'S RESPONSE TO PETITION FOR REHEARING**

---

OF COUNSEL:

BRIAN DOSTER
DAVID COURSEN
U.S. Environmental Protection Agency
Office of General Counsel (2344-A)
Ariel Rios Building
1200 Pennsylvania Ave., NW
Washington, D.C. 20460
Tel: 202-564-7508

DATE: June 29, 2015

JOHN C. CRUDEN
Assistant Attorney General
Environment & Natural Resources Div.

PERRY M. ROSEN
United States Department of Justice
Environment & Natural Resources Div.
Environmental Defense Section
P.O. Box 7611
Washington D.C.  20044
Tel:  (202) 353-7792

Counsel for Respondents

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................... 1

FACTUAL BACKGROUND.................................................................................. 2

    A.    The PSD Program ................................................................................. 2

    B.    This Court's Decision Vacating the Deferral Rule..................................... 4

    C.    The Supreme Court's Decision in *UARG v. EPA*.................................... 5

    D.    Actions in this Court after the Decision in *UARG v. EPA*....................... 5

    E.    Actions by EPA After the Decision in *UARG v. EPA*.............................. 6

ARGUMENT ........................................................................................................... 7

I.    THE COURT LACKS JURISDICTION OVER INTERVENORS'
CLAIMS .............................................................................................................. 7

II.    THERE IS NO BASIS OR NEED TO RESTORE THE DEFERRAL
RULE ................................................................................................................. 9

III.    INTERVENORS' SUBSTANTIVE ARGUMENTS FOR REHEARING
ARE UNAVAILING.......................................................................................... 11

    A.    The Supreme Court's Decision in *UARG v. EPA* Does
Not Undermine This Court's Ruling ....................................................... 11

    B.    The Intervenors Have Not Demonstrated Grounds for Remanding,
Rather Than Vacating, the Deferral Rule After It Has Expired.............. 14

    C.    Intervenors Do Not Provide New Grounds to Question the Court's
Finding That the Record Failed to Support the Deferral Rule................ 15

CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

## CASES:

*Allied-Signal, Inc. v. United States Nuclear Regulatory Comm'n,*
  988 F.2d 146 (D.C. Cir. 1993) ................................................................. 14

*\*Beethoven.com LLC v. Librarian of Congress,*
  394 F.3d 939 (D.C. Cir. 2005) ................................................................... 8

*Burke v. Barnes,*
  479 U.S. 361 (1987) ............................................................................. 8, 9

*Church of Scientology of Cal. v. United States,*
  506 U.S. 9 (1992) ..................................................................................... 7

*Coalition for Responsible Regulation v. EPA,*
  684 F.3d 102 (D.C. Cir. 2012) ................................................................... 5

*Comcast Corp. v. FCC,*
  579 F.3d 1 (D.C. Cir. 2009) ..................................................................... 14

*\*Ctr. for Biological Diversity v. EPA,*
  722 F.3d 401 (D.C. Cir. 2013) ................................................... 1, 3, 4, 8, 13

*Fund for Animals, Inc. v. Hogan,*
  428 F.3d 1059 (D.C. Cir. 2005) ................................................................. 9

*Honig v. Doe,*
  484 U.S. 305 (1988) ................................................................................. 7

*McBryde v. Comm. to Review,*
  264 F.3d 52 (D.C. Cir. 2001) ..................................................................... 8

*Mills v. Green,*
  159 U.S. 651 (1895) .............................................................................. 7, 8

*NRDC v. EPA,*
  571 F.3d, 1245 (D.C. Cir. 2002) .............................................................. 14

*Utility Air Regulatory Group v. EPA,*
  134 S. Ct. 2427 (2014)...............................................................1, 3, 5, 11, 12, 13

*Worth v. Jackson,*
  451 F.3d 854 (D.C. Cir. 2006).................................................................. 9

## STATUTES

42 U.S.C. § 7475(a)(4) ............................................................................. 3

42 U.S.C. § 7479(1)................................................................................. 2

42 U.S.C. §§ 7401-7671q ......................................................................... v

42 U.S.C. §§ 7661-7661f .......................................................................... vi

42 U.S.C. §§ 7470-7492 ........................................................................... v

## FEDERAL REGISTER

75 Fed. Reg. 31,514 (June 3, 2010)........................................................ v, 3

76 Fed. Reg. 43,490 (July 20, 2011) ............................................. v, 4, 5, 9, 10

## GLOSSARY

## RELEVANT EPA RULES

**Deferral Rule**: "Deferral for $CO_2$ Emissions from Bioenergy and Other Biogenic

Sources Under the Prevention of Significant Deterioration (PSD) and Title V

Programs," 76 Fed. Reg. 43,490 (July 20, 2011)

**Tailoring Rule**: "Prevention of Significant Deterioration and Title V Greenhouse

Gas Tailoring Rule," 75 Fed. Reg. 31,514 (June 3, 2010)

## TERMS

| | |
|---|---|
| **Act** | Clean Air Act, 42 U.S.C. §§ 7401-7671q |
| **BACT** | Best Available Control Technology |
| **CAA** | Clean Air Act, 42 U.S.C. §§ 7401-7671q |
| **$CO_2$** | Carbon dioxide |
| **$CO_2e$** | Carbon dioxide equivalent |
| **Dkt.** | Docket |
| **EPA** | Environmental Protection Agency |
| **GHGs**: | Greenhouse gases |
| **NAFO** | National Alliance of Forest Owners |
| **NSR**: | New Source Review |
| **PSD** | Prevention of Significant Deterioration, 42 U.S.C. §§ 7470-7492 |

**SIP**              State Implementation Plan

**TPY**              Tons per year

**TITLE V**          42 U.S.C. §§ 7661-7661f

## INTRODUCTION

On July 12, 2013, this Court issued its judgment granting the Petition for Review of EPA's regulation known as the "Deferral Rule," which deferred for three years the application of the Clean Air Act's ("CAA") Prevention of Significant Deterioration ("PSD") program to emissions of carbon dioxide ("$CO_2$") (a greenhouse gas) from biogenic sources, such as biofuels. *Ctr. for Biological Diversity v. EPA*, 722 F.3d 401 (D.C. Cir. 2013) ("*CBD v. EPA*"). Industry Intervenors ("Intervenors") now seek panel rehearing on the grounds that: (a) the Supreme Court's decision in *Utility Air Regulatory Group v. EPA*, 134 S. Ct. 2427 (2014) ("*UARG v. EPA*") purportedly undermines this Court's decision; (b) the Court improperly failed to exercise its discretion to remand, rather than vacate, the Deferral Rule; and (c) the Court erred in finding the record inadequate to support the Deferral Rule.

Although EPA vigorously defended the Deferral Rule, there is no legal basis for the Court to rehear this case. Intervenors seek rehearing to "affirm the Deferral Rule," Pet. at 3, but the Deferral Rule expired by its own express terms on July 21, 2014 (Pet. at 5, n.1) and is therefore no longer in existence. Rehearing issues raised by Intervenors and remanding the Deferral Rule to EPA would be a purely academic exercise, since any challenge to an expired rule is, by definition, moot. Indeed, because there is no present case or controversy regarding the Deferral Rule, the Court lacks jurisdiction to consider the Petition for Rehearing.

Even if the Court were inclined – and had jurisdiction – to consider new

briefing regarding the validity of a rule that is no longer operable, Intervenors' bases for such rehearing fail to support such action. Additionally, there is no need for rehearing issues related to temporary deferral of PSD to biogenic greenhouse gas emissions because: (a) EPA's present focus is on developing a biomass permitting rule that is intended to contain a permanent exemption from applicable PSD requirements for $CO_2$ emissions from sources combusting certain types of biomass fuel; (b) the central reason necessitating the original deferral (excessive permitting burdens) is no longer applicable after *UARG v. EPA* held that the requirement to obtain a PSD permit cannot be based solely on greenhouse gas emissions; and (c) Intervenors do not argue that continued deferral is necessary for sources still required to obtain PSD permits *or* that resuscitation of the deferral would benefit such sources. Finally, this is not the proper forum to seek further deferral or a stay of the application of PSD requirements to biogenic greenhouse gas emissions.

## FACTUAL BACKGROUND

### A.    The PSD Program

The CAA's PSD program makes it unlawful to construct or modify a "major emitting facility" in any area to which PSD applies "without first obtaining a [PSD] permit." *UARG v. EPA*, 134 S. Ct. at 2435. A "major emitting facility" is any stationary source that has the potential to emit over 100/250 tons per year ("tpy") of "any air pollutant." *Id.*; 42 U.S.C. § 7479(1). As the Supreme Court explained, this is the "triggering provision" of PSD, under which it is determined whether a stationary

2

source is a "major emitting facility" and is thereby subject to the substantive permitting requirements of PSD.  134 S. Ct. at 2439-42.  Any source that is, in fact, a major emitting facility must, in order to obtain a PSD permit necessary to initiate construction, "comply with emissions limitations that reflect the 'best available control technology' (or BACT) for 'each pollutant subject to regulation under' the Act."  *Id.* at 2435, quoting 42 U.S.C. § 7475(a)(4) (the "BACT requirement").

Because of the overwhelming burden associated with permitting millions of sources based on their emission of greenhouse gases that were not previously regulated under PSD and Title V of the CAA, EPA promulgated the Tailoring Rule, which raised the greenhouse gas threshold for the requirement to obtain a PSD permit (triggering provision).  *CBD v. EPA*, 722 F.3d at 405.  During Step 1 of the Tailoring Rule, only a source that would be required to obtain a PSD permit by virtue of its emissions of pollutants *other than* greenhouse gases ("anyway sources") needed to obtain a PSD permit and satisfy PSD's substantive requirements (i.e., implement BACT) for greenhouse gases.  75 Fed. Reg. 31,514, 31,523-24 (June 3, 2010).  In this Step, which EPA continues to implement, BACT for greenhouse gas emissions applies only if those emissions exceed 75,000 tpy, calculated as carbon dioxide equivalents ("$CO_2e$").

Under Step 2 of the Tailoring Rule, a source would be deemed a "major source," and therefore subject to PSD permitting solely by virtue of its greenhouse gas emissions, if it was a new source projected to emit 100,000 tpy or more of

3

greenhouse gases (or an existing major source whose project would emit 75,000 tpy or more). *Id.* at 31,523/3. These steps applied to all stationary sources of greenhouse gases, biogenic and others.[1]

## B.     This Court's Decision Vacating the Deferral Rule

EPA had noted that certain types of biogenic sources of greenhouse gas emissions may play a unique role in the carbon cycle and could have a *de minimis* (or even net reductive) impact on greenhouse gas concentrations in the atmosphere. *CBD v. EPA*, 722 F.3d at 406-07. The determination of these effects was, however, a matter of significant scientific debate. *Id.* Accordingly, EPA promulgated the Deferral Rule to allow time for EPA to study the issue. *Id.* Under the Deferral Rule, biogenic sources of $CO_2$ emissions would not be subject to PSD requirements during EPA's three-year study period, expiring on July 21, 2014. *Id.*; 76 Fed. Reg. at 43,492-93. EPA made it clear that this deferral was temporary, not lasting beyond its expiration date. 76 Fed. Reg. at 43,492/3, 495/2, 496/2, 498, 499/2, 501/3; Pet. at 1.

In a 2-1 decision, this Court held that although EPA might eventually determine that an exemption from PSD for certain types of biogenic greenhouse gas emissions was both permissible under the CAA and factually supportable, neither was adequately established in the Deferral Rule. *CBD v. EPA*, 722 F.3d at 409-12. Accordingly, the Court's order called for vacating the Deferral Rule. However, at the

---

[1] Contrary to Intervenors' contention, EPA's proposed treatment of biomass $CO_2$ emissions did not change in the final Tailoring Rule. 76 Fed. Reg. 42490, 43494-95.

request of Intervenors, the Court refrained from issuing the mandate that would
effectuate the vacatur of the Rule.  Dkt. 1466109.  Eventually, the Deferral Rule
expired under its express terms on July 21, 2014.  76 Fed. Reg. at 43,507; *CBD v.
EPA*, 722 F.3d at 407; Henderson, J., dissenting at 419, 421.

### C.    The Supreme Court's Decision in *UARG v. EPA*

The Supreme Court held that the CAA does not require a source to obtain a
PSD permit based solely on its emissions of greenhouse gases.  *UARG v. EPA*, 134 S.
Ct. at 2439-46.  At the same time, the Court found that the CAA requires the
application of BACT for greenhouse gases from sources required to obtain a PSD
permit by virtue of their emission of pollutants other than greenhouse gases (anyway
sources).  *Id.* at 2447-48.  Accordingly, the Court *affirmed* this Court's holding in
*Coalition for Responsible Regulation v. EPA*, 684 F.3d 102 (D.C. Cir. 2012) )("*CRR v.
EPA*"), upholding the application of BACT to greenhouse gases, finding that EPA
may "continue to treat greenhouse gases as a 'pollutant subject to regulation under
this chapter' for purposes of requiring BACT for 'anyway' sources."  134 S. Ct. at
2449.

### D.    Actions in this Court after the Decision in *UARG v. EPA*

On remand of *UARG v. EPA*, Petitioners asked this Court to rule that EPA
could not, in light of the Supreme Court's decision, apply BACT to anyway sources
until it promulgated a new regulation setting a *de mininis* level below which BACT
need not be applied to greenhouse gases.  Dkt. Nos. 1518254, 1518310.  This Court

rejected that proposal and issued an Amended Judgment that: vacates only those portions of EPA's regulations that require a source to obtain a PSD permit based solely on its greenhouse gas emissions; allows EPA to continue to apply BACT for greenhouse gas emissions from anyway sources; and directs EPA to "consider whether any further revisions to its regulations are appropriate in light of *UARG v. EPA*." Dkt. No. 1546840. (Pet. for Rehearing *En Banc* pending, Dkt. No. 1554171).

In a related case, Petitioners sought rehearing of a ruling requiring States to update their State Implementation Plans ("SIPs") to reflect the regulation of greenhouse gas emissions under PSD. *Texas and UARG v. EPA*, Nos. 10-1425, 11-1037. Petitioners there argued the same point: that *UARG v. EPA* requires EPA to conduct a rulemaking to establish a *de minimis* level for greenhouse gases before this pollutant can be subject to the BACT requirement in the permitting of anyway sources. Dkt Nos. 1513534, 1513528. The Court chose not to entertain rehearing based on this (or any other) issue. Dkt. No. 1550576.

### E.    Actions by EPA After the Decision in *UARG v. EPA*

In response to the decision in *UARG v. EPA*, EPA issued Memoranda explaining that it would no longer require non-anyway sources to obtain a PSD permit. Exs. A-C. EPA further explained that it would continue to apply BACT to greenhouse gas emissions in permits for anyway sources, and that, on an interim basis, this requirement would apply only where the construction project to be completed

would emit or increase greenhouse gases at or above the 75,000 tpy of $CO_2e$ level still reflected in the regulations implementing Step 1 of the Tailoring Rule. *Id.*

On November 19, 2014, EPA issued a Memorandum reporting on the status of the scientific analysis of biogenic sources of greenhouse gas emissions that EPA conducted during the Deferral period and setting out the remaining elements to that process. Ex. D; Pet. at 11. Based on those findings to date, EPA announced that it plans to "propose revisions to the PSD rules to include exemptions from the [] BACT requirement for GHGs from waste-derived feedstocks and from non-waste biogenic feedstocks derived from sustainable forest or agricultural practices . . . ," based on certain conditions or presentations being made, and that "[f]or all other biogenic feedstocks, the EPA intends to propose that biogenic $CO_2$ emissions would remain subject to the GHG BACT requirement at this time." Ex. D at 2-3.

## ARGUMENT

## I.    THE COURT LACKS JURISDICTION OVER INTERVENORS' CLAIMS

It is a fundamental jurisdictional principle that the Court may only hear live controversies and that a once-live controversy may be mooted by events occurring subsequent to the filing of an action:

> By constitutional design, a federal court is authorized only to adjudicate "actual, ongoing controversies," *Honig v. Doe,* 484 U.S. 305, 317[ ] (1988), and thus may not "give opinions upon moot questions or abstract propositions, or ... declare principles or rules of law which cannot affect the matter in issue in the case before it." *Mills v. Green*, 159 U.S. 651, 653 [ ] (1895), *quoted in Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 [ ]

(1992).  Accordingly, if an event occurs while a case is pending on appeal that makes it impossible for the court to grant "any effectual relief whatever" to a prevailing party, the appeal must be dismissed. *See Mills*, 159 U.S. at 653 [ ]; *accord, e.g., McBryde v. Comm. to Review*, 264 F.3d 52, 55 (D.C. Cir. 2001) ("If events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot.").

*Beethoven.com LLC v. Librarian of Congress*, 394 F.3d 939, 950 (D.C. Cir. 2005).  Here, the Court is required to deny rehearing because Intervenors fail to even assert that the expired Deferral Rule could have any continuing effect or that any additional explanation provided by EPA on remand could resurrect the expired deferral.

As the Court here explained, the determination of whether EPA can grant exemptions for biofuels should be made in the context of a permanent exemption for biofuels.  722 F.3d at 412.  To the extent that EPA eventually grants permanent exemptions for certain types of biogenic-based greenhouse gas emissions, Intervenors may choose to challenge the manner in which EPA does so, but that challenge is not ripe.  While Intervenors may be desirous of seeking temporary relief in anticipation of a rule granting permanent exemptions from PSD requirements, they may not do so through the attempted resurrection of an expired rule.

What Intervenors presumably seek is a new deferral period, but that would require a new administrative action by EPA.  The Court's authority in this case is limited to review of the *existing* rule.  Intervenors may not obtain a new deferral under the guise of asking the Court to reconsider its prior ruling on the Deferral Rule.  The deferral period set forth in that rule has expired on its own terms, which moots

8

Petitioners' claims and deprives the Court of jurisdiction. *See e.g.*, *Burke v. Barnes*, 479 U.S. 361, 363-64 (1987) (no jurisdiction to review a statute that expired on its own terms); *Fund for Animals, Inc. v. Hogan*, 428 F.3d 1059, 1064 (D.C. Cir. 2005) (challenge is moot where regulation at issue has expired); *Worth v. Jackson*, 451 F.3d 854, 861 (D.C. Cir. 2006) ("The Constitution nowhere licenses us to rule on the legality of an agency policy that no longer exists . . . .").

## II.    THERE IS NO BASIS OR NEED TO RESTORE THE DEFERRAL RULE

Resurrection of the expired Deferral Rule, even if that *could* be accomplished through rehearing, is unnecessary. The decision in *UARG v. EPA* has significantly narrowed the scope of the issue the Deferral Rule was intended to address. In issuing the Deferral Rule, EPA was primarily concerned with the burdens associated with requiring thousands of additional sources to obtain PSD and Title V permits. *See, e.g.*, 76 Fed. Reg. at 43,490/2, 491/1, 492/3, 493-94, 496, 497/1, 498/1, 499/2, 502/1 (deferral for *applicability* determinations). Although the deferral applied also to the application of BACT to carbon dioxide emissions from anyway sources, the burdens supporting the Deferral Rule stemmed from applying PSD and Title V to additional sources based on greenhouse gas emissions, not the applicability of BACT to biogenic $CO_2$ emissions from sources already required to obtain permits. 76 Fed. Reg. at 43,500/2-3. After *UARG v. EPA*, no source, biogenic or otherwise, is required to obtain a PSD or Title V permit based solely on its greenhouse gas emissions, and

9

hence there will not be thousands of new PSD or Title V permits for which deferral would be necessary.

While EPA's second biomass rule is under development, the unique attributes of biogenic greenhouse gas emissions from anyway sources can be considered on a case-by-case basis, through the BACT approval process. 76 Fed. Reg. at 43,492/2, 43,495/3. While EPA has recognized that case-by-case consideration of these issues will be complex and that rulemaking is desirable, the issue is more manageable on an interim basis now that PSD applicability is limited to the vastly smaller population of biomass sources that would trigger PSD based on emissions of non-greenhouse gases.

Further, as explained, EPA has shifted its focus to developing a new rule designed to address biogenic resources on a permanent basis, and Intervenors offer no basis for EPA to divert its limited resources from its development of such a rule to address additional deferral. Intervenors make no argument that the BACT case-by-case analysis will not suffice in the interim. Indeed, Intervenors offer neither any description of any purported injury that any source has experienced since this Court's decision or the July 21, 2014 expiration of the Deferral Rule nor any basis to stay the application of PSD to biogenic emissions of greenhouse gases. In fact, in the time since this Court's decision and continuing after the expiration of the Rule, Intervenors have sought to delay any action by this Court and only filed their present rehearing petition after yet another motion to extend the time for filing such petition was not

acted upon by the Court by the May 11, 2015 deadline.  Dkt. No. 1550657.[2]  In sum,

Intervenors have presented no policy justification or need for resurrecting the

Deferral Rule, even if resurrecting an expired regulation *were* within the power of the

Court to effectuate.

## III.  INTERVENORS' SUBSTANTIVE ARGUMENTS FOR REHEARING ARE UNAVAILING

### A.  The Supreme Court's Decision in *UARG v. EPA* Does Not Undermine This Court's Ruling

Intervenors assert that the Deferral Rule, the Tailoring Rule, and the Supreme

Court's decision in *UARG v. EPA* are all inextricably intertwined and, therefore, the

Court should reexamine its decision granting the Petition for Review of the Deferral

Rule.  Pet. at 5-8.  But Intervenors overstate the interconnectedness of the rules and

the Supreme Court's decision, and mere commonality of subject matter is not a basis

to rehear the issue central in this case, i.e., whether EPA adequately supported the

deferral of the application of PSD to biogenic sources of greenhouse gases?

Trying to buttress their claim, Intervenors assert that "the Deferral Rule

amended the Tailoring Rule," and, therefore, because the Supreme Court's decision

---

[2] Intervenors have another case pending in this Court in which they challenge the
application of the PSD program to biogenic greenhouse gas emissions.  In *National
Alliance of Forest Owners v. EPA ("NAFO v. EPA")*, Case No. 10-1209, Intervenors in
this case (NAFO and American Forest & Paper Assn.) petitioned for review of EPA's
failure to exempt biogenic sources from PSD in the Tailoring Rule.  Petitioners have
not moved to stay the application of PSD to biogenic sources in that case either.  To
the contrary, at the request of Petitioners, that case has been held in abeyance for
nearly five years.  Dkt. Nos. 1310363, 1391305, 1554565.

rejected part of the Tailoring Rule, it must have an impact on this case.  Pet. at 1, 2.

But the Deferral Rule did not amend the Tailoring Rule.  The Deferral Rule merely

deferred all requirements of the PSD statutory program to biogenic sources of

greenhouse gases for a limited time.  The Deferral Rule did not amend Step 1 or Step

2 of the Tailoring Rule.

Intervenors assert that "*UARG* dramatically undercuts EPA's legal authority to

regulate GHG emissions under the PSD program."  Pet. at 5.  As outlined above, the

only action of EPA reversed in *UARG v. EPA* was the application of PSD to sources

based solely on their emission of greenhouse gases, i.e., the application of PSD to

non-anyway sources.  EPA has announced it is not enforcing these "triggering

provisions" (Exs. A-C), and those triggering provisions have been vacated by this

Court's order on remand in *CRR v. EPA*.  Dkt. No. 1546840.

In contrast to the triggering issue, the Supreme Court made clear that EPA may

"continue" to apply BACT for the emission of greenhouse gases for anyway sources.

134 S. Ct. at 2449.  And, as outlined in the EPA Memoranda (Exs. A-C) and the

Court's Amended Judgment in *CRR v. EPA*, the application of BACT to anyway

sources is the only aspect of the PSD program that EPA is applying with regard to

greenhouse gas emissions, whether they be from biogenic or any other type of source

of such emissions.  Thus, there is no issue to rehear, and certainly not in the context

of a deferral of the application of PSD that has since lapsed.

Intervenors further contend that "the Supreme Court found that EPA must

justify, on *de minimis* grounds, the Tailoring Rule's emissions threshold for conducting GHG PSD 'best available control technology' (BACT) analyses," before applying BACT to anyway sources. Pet. at 1. But the Supreme Court explained that BACT already was being applied to anyway sources, without any requirement for EPA to first do a *de minimis* determination. 134 S. Ct. at 2447. The Court then expressly held that EPA may "*continue* to treat greenhouse gas emissions as a 'pollutant subject to regulation under this chapter [the CAA]' for purposes of requiring BACT for 'anyway sources.'" *Id.* at 2449 (emphasis added). The Court further explained that it is EPA's option as to whether to create a *de minimis* threshold for BACT. 134 S. Ct. at 2449 ("EPA *may* establish an appropriate *de minimis* threshold below which BACT is not required for a source's greenhouse gas emissions.") (Emphasis added). Thus, there is nothing about *UARG v. EPA* that undermines this Court's decision such that rehearing here is necessary or even appropriate.

Moreover, this Court already has rejected arguments that the Supreme Court's decision undercuts this Court's earlier holding that the PSD *BACT requirement* is automatically applicable to greenhouse gases under the statute without the necessity of promulgating a *de minimis* determination. *See* pp. 5-6, *supra.* That is the law of the Circuit and it was decided in the proper case, the remand from *UARG v. EPA* (and in another case raising the same issue with regard to amendment of SIPs). *Id.*

Finally, as EPA made clear, it did not rely on the *de minimis* doctrine in issuing or supporting the Deferral Rule. 722 F.3d at 409. *See also* Pet. at 14. The issue of

when and how to apply the *de minimis* doctrine was never before this Court and forms no basis for the deferral of the application of PSD that this Court would reconsider. While EPA may rely on the *de minimis* doctrine to support exemptions for certain biofuel emissions potentially to be promulgated in the future, any challenge to how that determination is to be made or what is required to establish a *de minimis* effect is not ripe and assuredly is not part of any analysis of the defunct Deferral Rule.

### B.   The Intervenors Have Not Demonstrated Grounds for Remanding, Rather Than Vacating, the Deferral Rule After It Has Expired

The Court has discretion to remand a rule without vacatur, but that decision "'depends on the seriousness of the order's deficiencies . . . and the disruptive consequences'" of vacatur. *Comcast Corp. v. FCC*, 579 F.3d 1, 8 (D.C. Cir. 2009), quoting A*llied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993). *See also, NRDC v. EPA*, 571 F.3d, 1245, 1279 (D.C. Cir. 2002) (where the regulation at issue "cannot be remedied by further explanation by EPA, it must be vacated."). At this point, there cannot be any disruptive consequences to vacating the Deferral Rule because that Rule has already expired under its own terms and it cannot be reinstated by further explanation by EPA of its reasoning. Consequently, whatever decision the Court might have potentially made with regard to vacatur versus remand at the time of its original decision, there is no basis at this time to alter that decision and remand to EPA, since no amount of further explanation by EPA can reinstate a Deferral Rule that has since expired on its own terms.

**C.**     **Intervenors Do Not Provide New Grounds to Question the Court's Finding That the Record Failed to Support the Deferral Rule**

While EPA believed the record adequately supported the Deferral Rule, the

Court disagreed, finding that EPA failed to adequately explain how the Rule was a

legitimate step towards full compliance with statutory requirements under the PSD

program. *CBD v. EPA*, 722 F.3d at 409-10. Intervenors seek rehearing on this issue,

but offer nothing new and merely reargue the points made in the parties' original

briefing. Strong disagreement with a court's decision is not a basis for rehearing.

<u><strong>CONCLUSION</strong></u>

For the foregoing reasons, the Petition for Rehearing should be denied.

Respectfully submitted,

DATE: June 29, 2015

JOHN C. CRUDEN
Assistant Attorney General
Environment & Natural Resources Div.

OF COUNSEL

BRIAN DOSTER
DAVID COURSEN
U.S. Environmental Protection Agency
Office of General Counsel (2344-A)
Ariel Rios Building
1200 Pennsylvania Ave., NW
Washington, D.C. 20460
Tel: 202-564-1932

/s/ Perry M. Rosen
PERRY M. ROSEN
United States Department of Justice
Environment & Natural Resources Div.
Environmental Defense Section
P.O. Box 7611
Washington D.C.  20044
Tel:  (202) 353-7792

Counsel for Respondents

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of said filing to the attorneys of record for Petitioners and all other parties who have registered with the Court's CM/ECF system.

Date: June 29, 2015                    /s/   Perry M. Rosen
                                       Perry M. Rosen
                                       Counsel for Respondents